FILED by ⟨sig⟩ D.C.

AUG 16 2018

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **18-80160**

18 U.S.C. § 371
18 U.S.C. § 1956(h)     CR - DIMITROULEAS
18 U.S.C. § 1956(a)(2)(A)
18 U.S.C. § 981(a)(1)(C)     MATTHEWMAN
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA,

vs.

RAUL GORRIN BELISARIO,

**FILED UNDER SEAL**

Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

At all times relevant to this Indictment, unless otherwise specified:

### COUNT 1
**Conspiracy to Violate the Foreign Corrupt Practices Act**
**(18 U.S.C. § 371)**

#### RELEVANT STATUTORY BACKGROUND

1.  The Foreign Corrupt Practices Act of 1977, as amended, Title 15, United States Code, Sections 78dd-1, *et seq.* (the "FCPA"), was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value to a foreign government official for the purpose of assisting in obtaining or retaining business for, or directing business to, any person.

## RELEVANT ENTITIES AND INDIVIDUALS

2. Defendant, **RAUL GORRIN BELISARIO**, was a citizen and national of Venezuela, who at various periods of the conspiracy was a resident of the United States, having maintained a residence in Coral Gables, Florida.

3. "Company 1" was a company incorporated and registered in Panama, and is beneficially controlled by defendant, **RAUL GORRIN BELISARIO**.

4. "Company 2" was a company incorporated and registered in Panama, and is beneficially controlled by defendant, **RAUL GORRIN BELISARIO**.

5. "Company 3" was a company incorporated and registered in Panama, and is beneficially controlled by defendant, **RAUL GORRIN BELISARIO**.

6. "Foreign Official 1" was a citizen and national of Venezuela and served as a high level official with decision-making authority and influence within the Oficina Nacional del Tesoro ("ONT"), the Venezuelan National Treasury, from in or around 2007 through in or around 2010, and thus was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Sections 78dd-2 (h)(2)(A) and 78dd-3(f)(2)(A).

7. "Foreign Official 2" was a citizen and national of Venezuela and served as a high level official with decision-making authority and influence within the ONT, from in or around 2011 through in or around 2013, and thus was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Sections 78dd-2 (h)(2)(A) and 78dd-3(f)(2)(A).

8. "Co-Conspirator 1" was the spouse of Foreign Official 2 and a citizen and national of Venezuela.

9. "Foreign Bank Official" was a Venezuelan citizen and national and an owner of "Foreign Bank," a bank located in the Dominican Republic. Foreign Bank Official was a "person"

2

and an "agent" of a person as those terms are defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(1).

## GENERAL ALLEGATIONS

10. Beginning in or around 2008, **RAUL GORRIN BELISARIO** offered and agreed to pay bribes to Foreign Official 1 for purposes of obtaining and retaining business; specifically, influencing and inducing Foreign Official 1 to permit **RAUL GORRIN BELISARIO** to conduct foreign currency exchanges for the Venezuelan government and securing an improper advantage in acquiring the right to conduct such exchange transactions.

11. In or around 2010, **RAUL GORRIN BELISARIO** partnered with Foreign Bank Official to acquire Foreign Bank to assist in laundering bribes paid to Venezuelan officials and the proceeds of this and other schemes.

12. From in or around 2011 through in or around 2017, after Foreign Official 1 left office, **RAUL GORRIN BELISARIO** caused bribe payments, totaling at least approximately $94 million to be paid for the benefit of Foreign Official 1, for the purpose of (a) continuing to make the bribe payments referenced in Paragraph 10 above; (b) preventing Foreign Official 1 from interfering with or impeding the ongoing scheme; and (c) to reward Foreign Official 1 for introducing **RAUL GORRIN BELISARIO** to Foreign Official 2 and facilitating the continuation of the bribery scheme with Foreign Official 2. For example, to carry out the payments to Foreign Official 1, **RAUL GORRIN BELISARIO** wired approximately $1.78 million from accounts in Switzerland to accounts in the Southern District of Florida and the Southern District of New York between in or around December 2012 until in or around June 2013, for the benefit of Foreign Official 1 and in furtherance of the scheme.

13. **RAUL GORRIN BELISARIO** used both personal bank accounts and bank accounts held by companies that he beneficially owned and controlled to wire bribe payments.

14. In or around 2011, when Foreign Official 2 replaced Foreign Official 1 in office, Foreign Official 1 introduced **RAUL GORRIN BELISARIO** to Foreign Official 2 and Co-Conspirator 1.

15. Beginning in or around 2011, **RAUL GORRIN BELISARIO** offered and agreed to pay bribes to Foreign Official 2 and Co-Conspirator 1 for purposes of influencing and inducing Foreign Official 2 to permit **RAUL GORRIN BELISARIO** to conduct foreign currency exchanges for the Venezuelan government and securing an improper advantage in acquiring the right to conduct such exchange transactions.

16. From in or around 2011 through in or around 2013, **RAUL GORRIN BELISARIO** caused bribe payments, totaling at least approximately $65 million to be paid for the benefit of Foreign Official 2. For example, to carry out the payments to Foreign Official 2, **RAUL GORRIN BELISARIO** wired approximately $8.6 million from accounts in Switzerland to accounts in the Southern District of Florida between in or around November 2012 until in or around May 2013 for the benefit of Foreign Official 2 and Co-Conspirator 1 and in furtherance of the scheme.

17. In exchange for Foreign Official 1 introducing **RAUL GORRIN BELISARIO** to Foreign Official 2 and Co-Conspirator 1, while in the Southern District of Florida, **RAUL GORRIN BELISARIO** offered and agreed to pay Foreign Official 1 a portion of the profits of his scheme with Foreign Official 2 and Co-Conspirator 1.

18. In addition to wiring money to and for the benefit of Foreign Official 1, Foreign Official 2, and Co-Conspirator 1, **RAUL GORRIN BELISARIO** purchased and paid expenses

related to approximately three jets, a yacht, multiple champion horses, and numerous high-end watches in the Southern District of Florida and Southern District of Texas for Foreign Official 1's benefit.

19.   **RAUL GORRIN BELISARIO** also purchased and paid expenses related to jets and a yacht in the Southern District of Florida and Southern District of Texas for Foreign Official 2 and Co-Conspirator 1's benefit.

20.   **RAUL GORRIN BELISARIO** received invoices and sent correspondence via e-mail with vendors for Foreign Official 1, Foreign Official 2, and Co-Conspirator 1, in order to pay expenses for Foreign Official 1, Foreign Official 2, and Co-Conspirator 1, which **RAUL GORRIN BELISARIO** caused to be paid via wire transfer from accounts in Switzerland and elsewhere.

21.   **RAUL GORRIN BELISARIO's** employees tracked these expense payments referenced in paragraph 20 on spreadsheets and emailed updated spreadsheets to **RAUL GORRIN BELISARIO**, Foreign Official 1, and Co-Conspirator 1 reflecting the changes as payments were made.

## THE CONSPIRACY

22.   From in or around 2008, through in or around 2017, in Miami-Dade County and West Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**RAUL GORRIN BELISARIO,**

did willfully, that is, with the intent to further the purpose of the conspiracy, and knowingly combine, conspire, confederate, and agree with others, known and unknown, to commit an offense against the United States, to wit:

   a.   being a domestic concern, to willfully and corruptly make use of the mails and a means and instrumentality of interstate commerce in furtherance of an offer, payment,

5

promise to pay, and authorization of the payment of money, and offered, gifted, promised to give, and authorized the giving of a thing of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (A)(i) influencing an act and decision of such foreign official in his official capacity, (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such official, and (iii) securing any improper advantage, and (B) inducing such foreign official to use his influence with a foreign government and instrumentality thereof to affect and influence any act and decision of such government and instrumentality, in order to assist **RAUL GORRIN BELISARIO** in obtaining and retaining business for and with, and directing business to, **RAUL GORRIN BELISARIO** and others, in violation of Title 15, United States Code, Section 78dd-2.

    b.  while in the territory of the United States, to willfully and corruptly make use of the mails and a means and instrumentality of interstate commerce and do an act in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, and offered, gifted, promised to give, and authorized the giving of a thing of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (A)(i) influencing an act and decision of such foreign official in his official capacity, (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such official, and (iii) securing any improper advantage, and (B) inducing such foreign official to use his influence with a foreign government and instrumentality thereof to affect and influence any act and decision of such government and instrumentality, in order to assist **RAUL GORRIN BELISARIO**, and others, in obtaining and retaining business for and with, and directing business to, **RAUL**

**GORRIN BELISARIO** and others, in obtaining and retaining business for and with, and directing business to, a person, in violation of Title 15, United States Code, Section 78dd-3.

## PURPOSE OF THE CONSPIRACY

23. It was a purpose of the conspiracy to enrich **RAUL GORRIN BELISARIO** and co-conspirators by making and concealing corrupt payments to foreign officials in Venezuela in order to obtain and retain contracts with the ONT in that country.

## MANNER AND MEANS OF THE CONSPIRACY

24. The manner and means by which **RAUL GORRIN BELISARIO** and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

   a. **RAUL GORRIN BELISARIO**, together with others, while in the Southern District of Florida and elsewhere, would and did discuss in person making bribe payments to foreign government officials in Venezuela to secure their assistance in awarding contracts to **RAUL GORRIN BELISARIO**.

   b. **RAUL GORRIN BELISARIO**, together with others, while in the Southern District of Florida and elsewhere, would and did offer to pay, promise to pay, and authorize the payment of bribes, directly and indirectly, to and for the benefit of foreign officials in Venezuela, to secure their assistance in awarding business to **RAUL GORRIN BELISARIO**.

   c. **RAUL GORRIN BELISARIO**, together with others, while in the Southern District of Florida and elsewhere, would and did discuss in person the manner and means by which the bribe payments were to be paid.

   d. **RAUL GORRIN BELISARIO**, together with others, while in the Southern District of Florida and elsewhere, would and did use Company 1, Company 2, and

Company 3 bank accounts, in lieu of or in addition to his own personal bank account at HSBC Private Bank (Suisse) SA, as a conduit for the payment of bribes to foreign government officials in Venezuela to conceal the bribe payments.

e. **RAUL GORRIN BELISARIO**, together with others, while in the Southern District of Florida and elsewhere, would and did cause to be wired certain funds from the bank accounts of Company 1, Company 2, and Company 3, as well as his own personal bank account at HSBC Private Bank (Suisse) SA, in Switzerland for the purpose of making payments to foreign government officials, including Foreign Official 1 and Foreign Official 2, in exchange for the officials' assistance in awarding business to **RAUL GORRIN BELISARIO**.

## OVERT ACTS

25. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed and caused to be committed in the Southern District of Florida and elsewhere:

(1) In or around 2010, **RAUL GORRIN BELISARIO**, Foreign Bank Official, and others acquired a financial institution in the Dominican Republic for the purpose of laundering money and paying bribes to Venezuelan officials.

(2) In or around 2012, **RAUL GORRIN BELESARIO** met with Foreign Official 1 in the Southern District of Florida to discuss the payment of bribes.

(3) On or about June 18, 2012, Foreign Official 2 caused a transfer of a bond from the ONT to Company 1's account in Switzerland, which **RAUL GORRIN BELISARIO** was then advised by his bank that it would be liquidated, exchanged, and held in his account and that the "contact person is [Foreign Official 2]."

8

(4)     On or about October 25, 2012, **RAUL GORRIN BELISARIO** sent an email with the subject "485,000" to one of his employees and business partners, attaching wire instructions for a yacht company and stating: "Please make the transfer and charge it to [Co-Conspirator 1]."

(5)     On or about October 29, 2012, **RAUL GORRIN BELISARIO** caused a payment of $485,000 to be wired from Company 1's account in Switzerland to the yacht company's (referenced in paragraph 25 (4)) account in the Southern District of Florida.

(6)     On or about November 13, 2012, after receiving an email with the details for the purchase of a yacht for "[Co-Conspirator 1]" for $4.35 million, **RAUL GORRIN BELISARIO** caused a payment of $4.35 million to be wired from Company 1's account in Switzerland to a yacht company's account in the Southern District of Florida.

(7)     On or about December 11, 2012, Foreign Official 1 emailed to **RAUL GORRIN BELISARIO** a copy of an invoice for $14,422 for veterinary services and wire instructions for making the payment.

(8)     On or about December 12, 2012, **RAUL GORRIN BELISARIO** caused a payment of approximately $15,000 to be wired from Company 1's account in Switzerland to the veterinarian's (referenced in paragraph 25 (7)) account in the Southern District of Florida.

(9)     On or about January 29, 2013, after receiving an email with the details for the purchase of a $1,103,371 security system for Foreign Official 1's Caracas, Venezuela, home, **RAUL GORRIN BELISARIO** emailed the security system proposal to Foreign Official 1, addressing Foreign Official 1 as "Boss," and requested his approval.

(10)    On or about January 30, 2013, **RAUL GORRIN BELISARIO** caused a payment of $1,103,371 to be wired from his personal account at HSBC Private Bank (Suisse) SA

9

in Switzerland to the security company's (referenced in paragraph 25 (9)) account in the Southern District of Florida.

(11) On or about February 5, 2013, while in Wellington, Florida, Foreign Official 1 emailed **RAUL GORRIN BELISARIO** a copy of an invoice for $174,800 from a horse transport company.

(12) On or about February 7, 2013, **RAUL GORRIN BELISARIO** caused a payment of $174,800 to be wired from his personal account at HSBC Private Bank (Suisse) SA in Switzerland to the horse transport company's (referenced in paragraph 25 (11)) account in New York.

(13) On or about February 15, 2013, Foreign Official 1 emailed **RAUL GORRIN BELESARIO** the identification of the individual who should be paid for expenses related to Foreign Official 1's horses.

(14) On or about February 25, 2013, **RAUL GORRIN BELISARIO** caused a payment of $150,000 to be wired from Company 1's account in Switzerland to the account of the individual to whom horse-related expenses were owed (referenced in paragraph 25 (13)) in the Southern District of Florida.

(15) On or about March 4, 2013, while in Wellington, Florida, Foreign Official 1 emailed **RAUL GORRIN BELISARIO** a copy of wire instructions for a horse transport company.

(16) On or about March 7, 2013, **RAUL GORRIN BELISARIO**, while in Southern District of Florida, caused a payment of $228,768 to be wired from his personal account at HSBC Private Bank (Suisse) SA in Switzerland to the horse transport company's (referenced in paragraph 25 (15)) account in New York.

(17)     On or about March 15, 2013, after receiving an email with the details for the purchase of a yacht for "[Co-Conspirator 1]" for $281,051, **RAUL GORRIN BELISARIO** caused a payment of $281,051 to be wired from Company 1's account in Switzerland to the yacht company's account in the Southern District of Florida.

(18)     On or about May 17, 2013, **RAUL GORRIN BELISARIO** caused a payment of $4 million to be wired from Company 2's account in Switzerland to Co-Conspirator 1's fashion company's account in the Southern District of Florida.

(19)     On or about May 29, 2013, Foreign Official 1 emailed **RAUL GORRIN BELISARIO** a copy of an invoice for $117,062.15 for home improvement work on Foreign Official 1's home.

(20)     On or about June 6, 2013, **RAUL GORRIN BELISARIO** caused a payment of $117,087.15 to be wired from Company 2's account in Switzerland to the home improvement company's (referenced in paragraph 25 (19)) account in the Southern District of Florida.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

26.     Paragraphs 1 through 21 and 23 through 25 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

27.     From in or around 2008, through in or around 2017, in Miami-Dade County and West Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**RAUL GORRIN BELISARIO,**

11

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury to violate Title 18, United States Code, Section 1956(a)(2)(A), that is, to knowingly transport, transmit, and transfer a monetary instrument and funds to a place in the United States from and through a place outside of the United States with the intent to promote the carrying on of specified unlawful activity, that is, (a) violations of the Foreign Corrupt Practices Act under Title 15, United States Code, Section 78dd-2 and 78dd-3, and (b) offenses against a foreign nation involving bribery of a public official and the misappropriation, theft, and embezzlement of public funds by or for the benefit of a public official, in violation of Title 18, United States Code, Section 1956(a)(2)(A), to wit, **RAUL GORRIN BELESARIO** agreed to transport, transmit, transfer, and cause to be transported, transmitted, and transferred funds from Switzerland to the United States, in furtherance of a scheme to pay and offer money and other things of value to foreign officials in Venezuela, including Foreign Official 1 and Foreign Official 2, to obtain and retain business for **RAUL GORRIN BELESARIO**.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 3-11
### Laundering of Monetary Instruments
### (18 U.S.C. § 1956(a)(2)(A))

28. Paragraphs 1 through 21 and 23 through 25 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

29. From in or around 2008, through in or around 2017, in Miami-Dade County and West Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**RAUL GORRIN BELISARIO,**

knowingly transported, transmitted, and transferred, and aided and abetted the transport, transmission, and transfer of, and attempted to transport, transmit, and transfer, a monetary

12

instrument and funds to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is, (a) violations of the Foreign Corrupt Practices Act under Title 15, United States Code, Sections 78dd-2 and 78dd-3, and (b) offenses against a foreign nation, specifically Venezuela, involving bribery of a public official and the misappropriation, theft, and embezzlement of public funds by or for the benefit of a public official, in violation of Title 18, United States Code, Section 1956(a)(2)(A), that is, on or about the following dates, as set forth in each count:

| Count | Approximate Date | Financial Transaction |
| --- | --- | --- |
| 3 | November 13, 2012 | Wire transfer in the amount of approximately $4.35 million from an account in Switzerland to an account located in the United States, specifically in the Southern District of Florida. |
| 4 | December 12, 2012 | Wire transfer in the amount of approximately $15,000 from an account in Switzerland to an account located in the United States, specifically the Southern District of Florida. |
| 5 | January 30, 2013 | Wire transfer in the amount of approximately $1,103,371 from an account in Switzerland to an account located in the United States, specifically in the Southern District of Florida. |
| 6 | February 7, 2013 | Wire transfer in the amount of approximately $174,800 from an account in Switzerland to an account located in the United States, specifically in the Southern District of New York. |
| 7 | February 25, 2013 | Wire transfer in the amount of approximately $150,000 from an account in Switzerland to an account located in the United States, specifically in the Southern District of Florida. |
| 8 | March 7, 2013 | Wire transfer in the amount of approximately $228,768 from an account in Switzerland to an account located in the United States, specifically in Southern District of New York. |
| 9 | March 15, 2013 | Wire transfer in the amount of approximately $281,051 from an account in Switzerland to an account located in the United States, specifically in Southern District of Florida. |
| 10 | May 17, 2013 | Wire transfer in the amount of approximately $4 million from an account in Switzerland to an account located in the United States, specifically in the Southern District of Florida. |
| 11 | June 6, 2013 | Wire transfer in the amount of approximately $117,087.15 from an account in Switzerland to an account located in the United States, specifically in the Southern District of Florida. |

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## **FORFEITURE**
**(18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1))**

1. The allegations contained in this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **RAUL GORRIN BELISARIO**, has an interest.

2. Upon conviction of a violation of Title 15, United States Code, Sections 78dd-2 and/or 78dd-3, or conspiracy to commit such violation, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C), which is made criminally applicable by Title 28, United States Code, Section 2461(c).

3. Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and/or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4. If any property subject to forfeiture, as a result of any act or omission of the defendant,

    (a) cannot be located upon the exercise of due diligence,

    (b) has been transferred or sold to, or deposited with, a third party,

    (c) has been placed beyond the jurisdiction of the Court,

    (d) has been substantially diminished in value, or

    (e) has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

5. The substitute property subject to forfeiture includes, but is not limited to, the following real property, together with all appurtenances, improvements, fixtures, easements and attachments, therein and/or thereon:

(1) 1241 Placetas Avenue, Coral Gables Florida 33146;

(2) 140 Paloma Drive, Coral Gables, Florida 33143;

(3) 144 Isla Dorada Boulevard, Coral Gables, Florida 33143;

(4) 18555 Collins Avenue, Unit 4401, Sunny Isles Beach, Florida 33160;

(5) 21055 Yacht Club Drive, Unit 2602, Aventura, Florida 33180;

(6) 21055 Yacht Club Drive, Unit 503, Aventura, Florida 33180;

(7) 4100 Salzedo Street, Unit 804, Coral Gables, Florida 33146;

(8) 4100 Salzedo Street, Unit 904, Coral Gables, Florida 33146;

(9) 4100 Salzedo Street, Unit 1010, Coral Gables, Florida 33146;

(10) 4100 Salzedo Street, Unit 608, Coral Gables, Florida 33146;

(11) 4100 Salzedo Street, Unit 807, Coral Gables, Florida 33146;

(12) 4100 Salzedo Street, Unit 809, Coral Gables, Florida 33146;

(13) 4100 Salzedo Street, Unit 811, Coral Gables, Florida 33146;

(14) 4100 Salzedo Street, Unit 813, Coral Gables, Florida 33146;

(15) 4100 Salzedo Street, Unit 903, Coral Gables, Florida 33146;

(16) 4100 Salzedo Street, Unit 909, Coral Gables, Florida 33146;

(17) 4100 Salzedo Street, Unit 913, Coral Gables, Florida 33146;

    (18)  20 W. 53rd St, 47A, New York, New York 10019;

    (19)  310 E. 53th Street, Apt 24C, New York, New York 10022;

    (20)  330 E. 57th Street, Apt 9, New York, New York 10022;

    (21)  330 E. 57th Street, Apt 11, New York, New York 10022;

    (22)  330 E. 57th Street, Apt 12, New York, New York 10022;

    (23)  60 Riverside Boulevard, PH 3702, New York, NY 10069; and

    (24)  60 Riverside Boulevard, PH 3602, New York, NY 10069.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

RANDY A. HUMMEL
ACTING UNITED STATES ATTORNEY
ACTING UNDER AUTHORITY CONFERRED
BY 28 U.S.C. § 515

Michael B. Nadler
Assistant United States Attorney

SANDRA L. MOSER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION

Vanessa Sisti Snyder
Paul A. Hayden
Trial Attorneys

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|
| v. | |
| RAUL GORRIN BELISARIO | **CERTIFICATE OF TRIAL ATTORNEY*** |
| Defendant.          / | **Superseding Case Information:** |

**Court Division:** (Select One)      New Defendant(s)      Yes ____   No ____
                                      Number of New Defendants ____
____ Miami    ____ Key West           Total number of counts ____
____ FTL   _X_ WPB    ____ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:  (Yes or No)    YES
   List language and/or dialect   SPANISH

4. This case will take   _14_   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                          (Check only one)

   I    0  to 5 days      ____              Petty      ____
   II   6  to 10 days     ____              Minor      ____
   III  11 to 20 days     _X_               Misdem.    ____
   IV   21 to 60 days     ____              Felony     _X_
   V    61 days and over  ____

6. Has this case been previously filed in this District Court?  (Yes or No)   NO
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   NO
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No)    NO

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   Yes ____    No _X_

_____
Michael Nadler
Assistant United States Attorney
Florida Bar No.: 52164

*Penalty Sheet(s) attached                                                    REV 5/3/17

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** RAUL GORRIN BELISARIO

**Case No:** _____

Count #1:

Conspiracy to Violate the Foreign Corrupt Practices Act

Title 18, United States Code, 371

*__**Max. Penalty:**__ Five (5) years' imprisonment

Counts #2:

Conspiracy to Commit Money Laundering

Title 18, United States Code, 1956(h)

*__**Max. Penalty:**__ Twenty (20) years' imprisonment as to each count

Count #3-11:

Laundering of Monetary Instruments

Title 18, United States Code, 1956(a)(2)(A)

*__**Max. Penalty:**__ Twenty (20) years' imprisonment

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.